**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM SKEWES-COX,<br><br>*Plaintiff*,<br><br>v.<br><br>GEORGETOWN UNIVERSITY LAW CENTER,<br><br>*Defendant*. | Civil Action No. 1:25-cv-02444 (CJN) |

# MEMORANDUM OPINION

William Skewes-Cox claims that Georgetown University Law Center violated the Rehabilitation Act, 29 U.S.C. § 794, in how it handled his request for an extension in his final semester of law school. There are serious questions about whether Skewes-Cox has standing to pursue much of the relief he seeks, but regardless, he waited too long to bring his claim. Because the statute of limitations has expired and no tolling is merited, the Court grants Georgetown's motion to dismiss.

## I. Background

In early 2021, Skewes-Cox was a law student in his last semester at Georgetown.[1] *See* ECF No. 12 (Amended Complaint) ¶¶ 9, 15. A serious surgery in March led to more hospitalizations, which limited his capacity for academic work. *Id.* ¶ 9. On the advice of the Dean of Students, he asked his professors for deadline extensions. *Id.* One granted him an extension to submit the rough draft of a paper intended to fulfill the upper-level writing requirement. *Id.* ¶ 10.

[1] "[O]n a motion to dismiss," the Court of course "accept[s] as true the well-pleaded factual allegations of the complaint." *Davis v. Billington*, 681 F.3d 377, 379 (D.C. Cir. 2012).

Fulfilling the requirement required the professor to provide feedback on the draft and meet with the student, who would then submit a revised paper. *Id.*

Skewes-Cox submitted a draft by the extended deadline, more than a month before the semester ended, but received no comments "until several days before the final paper was due." *Id.* ¶ 11. The course had three professors, but he alleges that they all ignored or deflected his requests for feedback in the interim. *Id.* ¶¶ 11–12. Their eventual feedback arrived during the exam period—when Georgetown policy forbade student-faculty contact and foreclosed any extensions. *Id.* ¶ 12; *see also id.* ¶ 13. And the required meeting never took place. *Id.* ¶ 13.

Unhappy with the resulting grade, Skewes-Cox raised a "grading concern" and requested that the grade be either struck from his transcript or converted to a "Pass." *Id.* ¶ 14. Georgetown treated the concern as a formal grade petition. *Id.* On August 4, 2021, Skewes-Cox met with Urska Velikonja, the Associate Dean for Academic Affairs, who formally denied his petition following the meeting. *Id.* ¶ 15; *see also* ECF No. 13-4 at 2. The next day, Skewes-Cox emailed Dean Velikonja his "contemporaneous" notes from their meeting.[2] ECF No. 13-4 at 2; *cf.* ECF No. 12 ¶ 17. Those notes recorded six grounds for Dean Velikonja's decision. ECF No. 13-4 at

[2] Although the Amended Complaint says that Skewes-Cox emailed his notes to the Dean "[i]mmediately after the meeting," Georgetown attached a copy of the email to its Motion to Dismiss, and the email was clearly sent the next day. *Compare* ECF No. 12 ¶ 17, *with* ECF No. 13-4 at 2. Skewes-Cox's email even characterizes its contents as preserving his "notes from *yesterday's* meeting." ECF No. 13-4 at 2 (emphasis added). On a motion to dismiss, the Court may consider a document (here, Skewes-Cox's email) "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (a court may consider as incorporated by reference a document which "comes before the court only as an attachment to the defendant's motion to dismiss"). Because Skewes-Cox does not contest the authenticity of the email, the Court is not required to accept the Amended Complaint's contradictory factual allegations as true. *See Banneker Ventures*, 798 F.3d at 1133 n.5; *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

2. These included the Dean's purported claims that Skewes-Cox's professors had satisfied the relevant governing standards for the upper-level writing requirement, that he had received "more and earlier feedback than his classmates," and that the feedback had been delayed because of the extension he had received after his surgery. *Id.* Skewes-Cox alleges that these claims were false and that the true dispositive factor driving her decision was "discriminatory animus" because he had sought a disability accommodation. ECF No. 12 ¶¶ 16–17. Including the contested paper grade, Skewes-Cox graduated with a cumulative grade point average of 3.62; without any grade at all, he would have met the 3.63 threshold for *cum laude* honors. *Id.* ¶ 19.

Skewes-Cox has been litigating the Dean's decision ever since. First, he filed a complaint with the Office of Civil Rights of the U.S. Department of Education. *Skewes-Cox v. Georgetown Univ. L. Ctr.*, No. 22-cv-818, 2024 WL 939979, at *1 (D.D.C. Mar. 5, 2024) ("*Skewes-Cox I*"), *aff'd in part*, No. 24-5065, 2024 WL 4248506 (D.C. Cir. Sept. 18, 2024) ("*Skewes-Cox II*"), *aff'd*, No. 24-5065, 2025 WL 1099211 (D.C. Cir. Apr. 14, 2025) ("*Skewes-Cox III*"); *cf.* ECF No. 12 ¶ 7. That office denied his complaint on October 18, 2021, and denied his appeal on January 26, 2022. *Skewes-Cox I*, 2024 WL 939979, at *1. He then sued Georgetown in this Court on March 25, 2022.[3] ECF No. 12 ¶ 7. Two years later, the Court dismissed that complaint without prejudice for failure to effect service and—in the alternative—for failure to state a claim. *Skewes-Cox I*, 2024 WL 939979, at *2–4. Rather than refile, Skewes-Cox appealed. The Court of Appeals agreed that Skewes-Cox had failed to properly serve Georgetown, affirming this Court's dismissal on April 14, 2025, without reaching the alternative holding that Skewes-Cox had failed to state a

[3] Skewes-Cox's previous suit also brought a claim against the U.S. Department of Education under the Administrative Procedure Act. *Skewes-Cox I*, 2024 WL 939979, at *1. The Court granted the Department's motion to dismiss for failure to state a claim, and the Court of Appeals affirmed. *Id.* at *4; *Skewes-Cox II*, 2024 WL 4248506, at *1.

claim. *Skewes-Cox III*, 2025 WL 1099211, at *2, *4. The mandate in that appeal issued on June 11, 2025, closing the case. ECF No. 12 ¶ 7.

Skewes-Cox filed this action 37 days later. ECF No. 1. That makes this his second suit in this Court on the same facts. In response to Georgetown's first Motion to Dismiss, Skewes-Cox filed the operative Amended Complaint in December 2025, mooting the original motion. *See* ECF No. 11 (Motion to Dismiss); ECF No. 12 (Amended Complaint). He asks the Court to declare that Georgetown discriminated against him, to order it to reconsider his petition *de novo*, to require changes to its disability procedures, and to compel a written apology from Dean Velikonja. ECF No. 12 at 10–11; *see also id.* ¶ 3. In the alternative, if injunctive relief is not available, he asks for one dollar in nominal damages. *Id.* at 11. Georgetown has moved to dismiss, arguing that the Amended Complaint fails to state a claim, that Skewes-Cox lacks standing, and that his claim is time-barred anyway. *See* ECF No. 13.

## II. Legal Standards

The argument that Skewes-Cox lacks Article III standing is a challenge to the Court's jurisdiction under Rule 12(b)(1). Demonstrating jurisdiction is the plaintiff's burden. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration adopted and internal quotation marks omitted).

The other two arguments—that the Complaint fails to state a claim and that any claim is time-barred regardless—are challenges under Rule 12(b)(6). In evaluating those arguments, the Court accepts well-pleaded allegations as true but need not credit legal conclusions cast as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must it credit inferences the alleged facts will not bear. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. Analysis

### A. Standing

Because Article III standing is a prerequisite for the exercise of jurisdiction, the Court considers it before any nonjurisdictional defense. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431. Claims for declaratory and injunctive relief carry a "significantly more rigorous burden"—past injury will not suffice, and the plaintiff must identify an ongoing injury or an immediate threat of future injury. *Matthews v. District of Columbia*, 507 F. Supp. 3d 203, 208 (D.D.C. 2020).

The Court begins with Skewes-Cox's alternative request for one dollar in nominal damages, which the Parties treat as an afterthought. *See* ECF No. 12 at 11; ECF No. 13-1 at 13.[4] Georgetown says that this request rises and falls with the rest, since Skewes-Cox has alleged no cognizable injury at all. ECF No. 13-1 at 12, 19–20. Neither party cites *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). Nominal damages, the Supreme Court held there, are not a symbolic gesture, but rather the remedy the common law supplied for a completed violation of a legal right that caused no provable loss, and a request for them therefore satisfies redressability. *Id.* at 290–92. That holding "concerns only redressability"—a plaintiff must still establish the other elements of standing. *Id.* at 292–93. Despite Georgetown's insistence that Skewes-Cox has not and cannot show injury-in-fact, the remaining elements are satisfied here. *Compare* ECF

[4] The Court uses the page numbers generated by CM/ECF.

No. 13-1 at 12–16, *with* ECF No. 15 at 17–20. Skewes-Cox alleges that Georgetown violated the Rehabilitation Act by resolving an academic dispute against him because he sought a disability accommodation. ECF No. 12 ¶¶ 15–17, 22. And he also alleges that that violation caused him to miss out on employment opportunities, a traditional Article III injury. *Id.* ¶ 20. Whether the Amended Complaint states a claim is a separate question, and whether the alleged claim is timely turns out to be dispositive. But the request for nominal damages gives the Court jurisdiction to reach the question of timeliness.[5]

The equitable relief Skewes-Cox seeks presents harder questions—though not the ones Georgetown emphasizes. Georgetown focuses on injury-in-fact, arguing that Skewes-Cox's purported "consistent employment tenure in prestigious roles" since his graduation undermines any argument to support injury-in-fact. ECF No. 13-1 at 15. But even were the Court to accept Georgetown's invitation to consider materials outside the pleadings in support of that contention, it proves less than Georgetown supposes. As Skewes-Cox rightly points out, a plaintiff who succeeds notwithstanding an injury has not thereby ceased to be injured. ECF No. 15 at 18. Nor is it any answer to a claim of foreclosed opportunity that the claimant found other opportunities.

The bigger difficulty is redressability, and it stems from the way Skewes-Cox has framed his request for relief. He does not ask the Court to change his grade. He disclaims any such request—understandably, given that he agrees that resolving academic disputes is "entirely outside the province of a federal court." ECF No. 15 at 21 (quoting *Zachary M. v. Bd. of Educ.*, 829 F.

[5] There is a separate question of whether nominal damages are available under the Rehabilitation Act because the Supreme Court has held that the remedies available under Spending Clause statutes (like the Rehabilitation Act) are limited to those traditionally available in suits for breach of contract. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 220–21 (2022). But whether nominal damages remain available under the Rehabilitation Act after *Cummings* is a question of remedies on the merits, not of the Court's jurisdiction. No party raised the question, and the untimeliness of the claim makes any answer unnecessary.

Supp. 2d 649, 661 (N.D. Ill. 2011) (highlighting the impropriety of courts getting involved in "subjective academic judgments")). What he asks instead is that the Court order Georgetown to reconsider the petition without discriminatory animus. That framing respects the deference owed to academic judgments. *See Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). But an order compelling reconsideration secures a process, not an outcome.

Would an animus-free reconsideration of his grade petition redress Skewes-Cox's injury? He has already conceded that the Court cannot direct Georgetown to decide differently from the first time, and his request for nominal damages already supplies a remedy for the completed harm of an animus-based decision anyway. "[R]edressability generally turns on how a judgment binds the parties." *America First Legal Found. v. Greer*, 153 F.4th 1311, 1315 (D.C. Cir. 2025). But the injury Skewes-Cox hopes to remedy with his requests for equitable relief is the lost opportunities he says have followed from the fact that he didn't graduate with honors—and unbiased reconsideration of his petition would not, by itself, reach that injury. Even if Georgetown reached a different decision the second time around, there's no telling what disposition it might choose—striking the grade, converting it to a "Pass," or something else—or whether Skewes-Cox's injury would be redressed. To do that, Georgetown would have to reconsider the petition and reach a different result; it would have to select a disposition that alters the transcript rather than merely restating the grade; the registrar would have to compute the resulting average in a manner that carries it above 3.63; and the honors designation, conferred five years after graduation, would have to open the opportunities Skewes-Cox says were closed to him. A "highly attenuated chain of possibilities" does not ordinarily satisfy Article III. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Plus, the same contingencies raise a parallel question about causation, because the injury Skewes-Cox identifies runs back to the challenged decision only through them

and a causal chain that is "too speculative and attenuated" cannot "support Article III standing." *America First*, 153 F.4th at 1315.

Skewes-Cox's remaining requests present similar problems. A declaration that Georgetown discriminated in 2021 would concern past injury alone, which will not ordinarily sustain declaratory relief. *Matthews*, 507 F. Supp. 3d at 208. An order requiring Georgetown to revise its disability procedures would benefit students still enrolled, but to have standing to pursue that kind of prospective relief, Skewes-Cox would have to "allege a likelihood of future violations of [his] rights by [Georgetown], not simply future effects from past violations." *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (emphasis omitted). And a compelled apology, whatever else it might accomplish, would do nothing to redress the lost honors or lost opportunities Skewes-Cox alleges. Skewes-Cox alternatively invokes the "capable of repetition yet evading review" doctrine, arguing that Georgetown is likely to "injure similarly situated students in the future." ECF No. 15 at 20–21. But that doctrine is an exception to mootness, and "standing admits of no similar exception." *Matthews*, 507 F. Supp. 3d at 209. "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

The Court, however, need not resolve all these doubts about Skewes-Cox's standing to pursue equitable relief. Those questions affect only the remedies available to him, not the Court's jurisdiction, which his request for nominal damages secures. Because the limitations bar discussed below applies to his claim as a whole, dismissal is required regardless of whether he can establish standing for every form of relief he seeks.

**B. Statute of Limitations**

"A complaint is subject to dismissal for failure to state a claim" where its allegations "show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007). The Rehabilitation Act supplies no limitations period, so courts borrow the most analogous period from local law. *Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016). The Court of Appeals has held that the District of Columbia's three-year period for personal-injury actions governs Rehabilitation Act claims. *Abreu v. Howard Univ.*, 93 F.4th 498, 501–02 (D.C. Cir. 2024).

Skewes-Cox's claim falls outside the limitations period. It accrued no later than August 5, 2021, the day when Skewes-Cox alleges that Dean Velikonja denied the grade petition. ECF No. 12 ¶ 17. That means the limitations period ran for three years until it expired on August 5, 2024, but Skewes-Cox did not file this action until July 18, 2025. ECF No. 1. Even crediting the entire period his administrative complaint was pending before the Office of Civil Rights—August 5, 2021, to January 26, 2022—he still filed the complaint more than five and a half months late. *See* ECF No. 13-1 at 12. And his prior action before this Court did not extend the deadline any further because "once a suit is dismissed, even if without prejudice, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (internal quotation marks omitted).

Skewes-Cox does not dispute this arithmetic: He "accepts the calculation advanced by Georgetown" and concedes that he filed after the period "technically lapsed." ECF No. 15 at 14.

But he does argue that the Court should equitably toll the statute of limitations.[6] *Id.* at 14–16. The Parties disagree about which body of tolling law applies. Georgetown says the District's, which recognizes only the lulling doctrine and the discovery rule as "limited exceptions" to its "generally strict application of statutes of limitations." *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156–57 (D.C. 1998); *see also Johnson v. Marcheta Invs. Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998) ("District of Columbia law does not recognize an equitable tolling exception to the statute of limitations."). Skewes-Cox assumes the federal standard, which "permits a court to pause a statutory time limit 'when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). The Court need not resolve this disagreement because Skewes-Cox's argument fails under both the federal standard he invokes and the narrower District rule.

Equitable tolling at the federal level requires a litigant to establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "[T]he diligence prong . . . covers those affairs within the litigant's control," whereas "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and*

[6] Skewes-Cox suggests that Georgetown forfeited any response to equitable tolling by omitting it from the opening brief. ECF No. 15 at 14. But tolling is an avoidance of a limitations defense, and it was Skewes-Cox who first raised it, in his opposition. *Compare id.* (Response to Motion to Dismiss) at 14–16 (arguing for equitable tolling), *with* ECF No. 12 (Amended Complaint) (no mention of tolling of any kind). Georgetown's reply properly answered that argument rather than launching a new one. *Cf. United States v. Powers*, 885 F.3d 728, 732 (D.C. Cir. 2018) ("It is true that appellants ordinarily must raise any issues ripe for our consideration in their opening briefs," but "an appellant generally may, in a reply brief, respond to arguments raised for the first time in the appellee's brief." (internal quotation marks omitted)).

beyond its control." *Id.* at 257. These "two requirements" are "distinct elements." *Id.* at 256. The "litigant seeking equitable tolling bears the burden of establishing" both. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Even crediting Skewes-Cox's diligence in pursuing his claim, equitable tolling is not merited here due to his failure to establish that extraordinary circumstances outside his control prevented the timely filing of this suit. To meet the second requirement for equitable tolling, "the circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020) (alteration adopted) (quoting *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014), *aff'd*, 577 U.S. 250 (2016)). Here, Skewes-Cox attributes his late filing to the pace of judicial decisions in the earlier case—roughly two years for the Court to grant Georgetown's motion to dismiss after the filing of the complaint and some fifteen months for his appeal to run its course. ECF No. 15 at 15. The Court does not minimize the frustration of waiting, but the prior proceedings and appeal did not prevent Skewes-Cox from filing anything. The Court dismissed the previous action in March 2024—five months before the three-year period ran in August 2024—and nothing stopped Skewes-Cox during that period from attempting to take further steps to serve Georgetown, to amend his original complaint, or to file a new complaint.[7] Because Skewes-Cox's delay in filing the present action was not a circumstance outside of his control, he fails to meet the second requirement for equitable tolling.

Skewes-Cox contends that the Court was required by *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 778 (D.C. Cir. 2012), to warn him that a dismissal without prejudice for failure to

[7] Indeed, Skewes-Cox himself admits that "[p]erhaps [he] could have refiled his suit after the March 2024 dismissal without prejudice of his previous action." ECF No. 15 at 15.

serve process might imperil his claim. ECF No. 15 at 16. But *Angellino* addressed a different question—whether a *sua sponte* dismissal for failure to prosecute was an abuse of discretion. 688 F.3d at 778. It did not hold that the absence of a warning entitles a plaintiff to equitable tolling, and it explicitly highlighted the previously described rule—that lawsuits dismissed without prejudice have no tolling effect on a limitations period—that makes Skewes-Cox's claim here untimely. *Id.* (citing *Ciralsky*, 355 F.3d at 672); *see supra* p. 9. That Skewes-Cox (a practicing lawyer) is proceeding *pro se* does not excuse him from being subject to the limits on equitable tolling. *See Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) ("The requirement that courts construe pro se pleadings liberally does not ordinarily apply to pro se lawyers."); *see also Galbreath v. Dudas*, No. 04-cv-2222, 2006 WL 156701, at *2–3 (D.D.C. Jan. 20, 2006) (rejecting equitable tolling where a *pro se* plaintiff filed a second suit after appealing the dismissal of his complaint instead of filing an amended complaint).

Skewes-Cox would not fare any better under the District of Columbia's more restrictive regime. "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations." *Nattah v. Bush*, 770 F. Supp. 2d 193, 208 (D.D.C. 2011) (quoting *Johnson*, 711 A.2d at 112). And neither the lulling doctrine nor the discovery rule—the "two limited exceptions to [the District's] generally strict application of statutes of limitations"—apply in this situation. *East*, 718 A.2d at 156. "The lulling doctrine tolls the statute of limitations only when a defendant 'has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run.'" *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 85 (D.D.C. 2021) (quoting *East*, 718 A.2d at 156–57). But Skewes-Cox does not allege that Georgetown lulled him into inaction. Instead, Skewes-Cox took action at every possible level of review and is subject to the statute of limitations here, not because of anything Georgetown did,

but because of his own litigation choices. The other option is the discovery rule, which says that "a claim 'does not accrue until the plaintiff, exercising due diligence, has discovered or reasonably should have discovered all of the essential elements of [his] possible cause of action, *i.e.*, duty, breach, causation and damages.'" *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 9 (D.D.C. 2019) (quoting *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994)). That exception offers no help—Skewes-Cox's original suit raised the same claim as this one, which means he had already discovered all the elements of his claim no later than the filing of that suit in March 2022. *See* ECF No. 12 ¶ 7. Even applying the discovery rule generously, Skewes-Cox's claim here cannot have accrued any later than that, and combined with a three-year limitations period, that still makes this suit, filed in July 2025, several months too late.

In short, Skewes-Cox's claim is barred by the applicable statute of limitations and is not eligible for equitable tolling, no matter which body of tolling law applies to it.

**C. Leave to Amend**

Skewes-Cox asks in the alternative for leave to cure whatever defect the Court identifies. ECF No. 15 at 26. Leave should be freely given when justice so requires, but not where amendment would be futile. *Compare* Fed. R. Civ. P. 15(a)(2), *with Foman v. Davis*, 371 U.S. 178, 182 (1962), *and Jones v. U.S. Dep't of Just.*, 111 F. Supp. 3d 25, 33 n.9 (D.D.C. 2015). Amendment would be futile here. The dates that decide the limitations question—primarily the August 2021 accrual and the July 2025 filing—are fixed and undisputed. No amended pleading would change the facts that defeat any possible argument for tolling. Because a dismissal on limitations grounds adjudicates the claim itself, rather than the Court's power to hear it, and because no amendment could revive it, the dismissal is with prejudice. *See* Fed. R. Civ. P. 41(b).

## IV. Conclusion

For the foregoing reasons, the Court grants Georgetown's Motion to Dismiss, ECF No. 13. Georgetown's earlier motion to dismiss the original complaint, ECF No. 11, is denied as moot. The Court will issue an Order contemporaneously with this Memorandum Opinion.

DATE: September 23, 2026

CARL J. NICHOLS
United States District Judge